| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Edwin Fuentes-Correa,<br><br>Defendant. | Crim. No.: 13-71(CCC/SCC) |

## OPINION AND ORDER RE: DEFENDANT'S MOTION TO COMPEL

Defendant Edwin Fuentes-Correa is charged in a two-count indictment. Count one charges a violation of 21 U.S.C. § 841(a)(1); because of the amount of drugs charged, the violation carries a maximum penalty of 20 years. Defendant is also charged with a violation of 18 U.S.C. § 924(c)(1)(A), which carries a mandatory minimum of five years and a maximum of life in prison. Twice, we have attempted to hold a detention hearing in this case, and both times we have been stymied by

a conflict that has a arisen between Defendant and the Government. Briefly, the Government wishes to proceed by proffer, and it does not intend to call the case agent to the stand; Defendant, meanwhile, wishes to question the case agent, and, to that end, has attempted to subpoena him. The Government has refused to produce the case agent, however, citing Defendant's failure to properly comply with Department of Homeland Security ("DHS") regulations for subpoenaing its employees; moreover, the Government asserts a broader right to control the testimony of its employees. Defendant has filed a motion to compel the case agent's testimony, and at the end of the most recent aborted detention hearing, he informed the Court that he would re-subpoena the case agent in compliance with the regulations.

Since then, we have not been informed whether a new subpoena has been served, nor, if it has, whether the Government has agreed to comply. Accordingly, we take up the motion to compel and offer some guidance and direction to the parties.

## I.  Presumptions and Burdens

At the detention hearing, there was some confusion over whether this was a presumption case for the purposes of

detention. *See* 18 U.S.C. § 3142(e)(3). Having reviewed the matter, we conclude that *both* charges here trigger the presumption. *See id.* §§ 3142(e)(3)(A) (probable cause to believe that the "person committed an offense for which a *maximum term* of imprisonment is prescribed in the Controlled Substance Act"), 3142(e)(3)(B) (probable cause to believe that the person committed *any* "offense under section 924(c)"). Thus, the presumption is certainly triggered in this case (especially now that an indictment has been returned).

It is important to note, however, that even where the § 3142(e) presumption arises, as it does in this case, the ultimate burden to persuade the court that detention is proper remains at all times with the Government. *See United States v. Palmer-Contreras*, 835 F.2d 15, 17–18 (1st Cir. 1987) (per curiam) (noting that while the § 3142(e) presumption helps the Government, it "only imposes a burden of production on a defendant"; "the burden of persuasion remains with the government"); *see also United States v. Agosto-Vives*, 757 F. Supp. 2d 110, 113 (D.P.R. 2010) ("Notably, the burden is one of production, not persuasion."). At the least, this means that the Government cannot simply do nothing and expect the presumption to do the Government's job for it.

Nonetheless, the defendant must rebut the presumption. Because his burden is of production, not persuasion, rebuttal means simply producing "some evidence" that he is not a danger to the community or a risk of flight. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.) ("In order to 'rebut' the presumption, the defendant must produce *some evidence* . . . . (emphasis added)). But the production of evidence does not erase the presumption; instead, the court should weigh the facts of the case before it against the facts that Congress found in creating the presumption: "the fact that Congress has found that [drug] offenders, as a general rule, pose *special* risks of flight." *Id.*; *see also id.* ("And, since Congress seeks only consideration of the general drug offender/flight problem, the magistrate or judge may still conclude that what is true in general is not true in the particular case before him. *He is free to do so, and to release the defendant, as long as the defendant has produced some evidence and the magistrate judge has evaluated all of the evidence with Congress's view of the problem in mind*." (emphasis added)). As it is described in a later case, once the defendant produces "some evidence" against the presumption, the court must still give the presumption evidentiary weight—"the amount depending on how closely

the defendant's case resembles the congressional paradigm."[1] *Palmer-Contreras*, 835 F.2d at 18. The evidentiary weight of the presumption is balanced with the remaining factors provided in § 3142. *Id.*

## II. The *Touhy* Rules

Defendant has to present evidence to rebut the presumption, and the better evidence he presents, the less heavily the presumption will weigh against him. To this end, he wants to call the Government's case agent, whose testimony, he believes, will support his claim for release. The Government has so far refused to allow the case agent to testify, either on behalf of the Government or Defendant. Below, we outline the basis for the Government's denial, as well as how the doctrine relates to detention hearings.

---

**1.** Basically, the "congressional paradigm" refers to "Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries." *United States v. Palmer-Contreras*, 835 F.2d 15, 17 (1st Cir. 1987). Because traffickers may be able to forfeit even large bonds, they may pose particularly serious flight risks. Likewise, the presumption reminds us that defendants facing very long prison terms have particular incentives to flee.

### A.  The *Touhy* Doctrine Explained

*Touhy* was a federal habeas petition related to a state-court conviction. *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 463–64 (1952). In those proceedings, a subpoena was issued to an FBI agent requiring the production of certain documents. *See id.* at 464. The Government sought to quash the subpoena on the grounds that certain regulations relating to subpoenaing Department of Justice employees had not been followed. *See id.* Pursuant to those regulations, the FBI agent refused to testify and was held in contempt by the trial judge. *See id.* The Supreme Court agreed to hear the case, and it framed the question presented this way: may a subordinate of DOJ refuse to comply with a subpoena "on the ground that the subordinate is prohibited from making such submission by his superior" pursuant to a valid regulation. *See id.* at 467.

The Court held that the regulations were valid and that the agent properly refused to produce the papers. *Id.* at 468. In reaching this conclusion, the Court emphasized that, given the large amount of information in the Government's possession, procedures relating to the dissemination of that information make sense. *See id.* ("When one considers the variety of information contained in the files of any government departm-

ent and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether the subpoenas duces tecum will willingly be obeyed or challenged is obvious."). *Touhy*'s bottom line, then, was relatively simple: the Attorney General had a general authority to regulate how his subordinates complied with subpoenas, and a district court could not hold a subordinate in contempt for complying with those regulations.

It's important to take into account what the Court in *Touhy* did not say. Crucially, it reserved decision on the question of "whether or on what conditions, or subject to what disadvantages to the Government," the Attorney General could "refuse to produce government papers under his charge." *Id.* at 469. Likewise, the Court reserved the question of "the effect of a refusal to produce in a prosecution by the United States."[2] *Id.* at

---

**2.** In a footnote to this statement, the Court cited the case of *United States v. Andolschek*, which ordered a new trial because the Government, on the basis of similar regulations, had refused to produce to the defendant certain reports in the Government's possession. 142 F.2d 503, 506 (2d Cir. 1944) (Hand, J.). The Supreme Court has since cited *Andolschek* approvingly. *See, e.g., United States v. Valenzuela-Bernal*, 458 U.S. 858, 881–82 (1982) (accepting that the Government may at times need to withhold information in its possession from criminal defendants, but holding that, in a criminal prosecution, that interest "must yield before the rights to which an accused is constitutionally

467. In a forceful concurrence, Justice Frankfurter expanded on
the significance of these reservations. He wrote that the Court's
opinion in *Touhy* cannot be read as suggesting that "the
Government can shut of an appropriate judicial demand for"
relevant evidence in its possession. *Id.* at 472 (Frankfurter, J.,
concurring). Expanding on that notion, he wrote that while the
Attorney General could certainly issue regulations command-
ing his employees with regard to the handling of the Govern-
ment's information, such a right was contingent on his being
available to answer for those decisions. *See id.* ("[T]he decision
and opinion in this case cannot afford a basis for a future
suggestion that the Attorney General can forbid every subordi-
nate who is capable of being served by process from producing
relevant documents and later contest a requirement upon him
to produce on the ground that procedurally he cannot be
reached. In joining the Court's opinion I assume the con-
trary—that the Attorney General can be reached by legal

---

entitled"); *see also Jencks v. United States*, 353 U.S. 657 672 (1957) (citing
*Andolschek* and holding that a "criminal action must be dismissed when
the Government, on the ground of privilege, elects not to comply with
an order to produce, for the accused's inspection and for admission in
evidence, relevant statements or reports in its possession of government
witnesses touching the subject matter of their testimony at trial").

process."). In answering, the Attorney General could raise issues of privilege, but he could not simply refuse production. *See id.* at 473.

### B.  The *Touhy* Regulations at Issue

Here, we are dealing with *Touhy* regulations promulgated by the Department of Homeland Security. The authority for these regulations is found in what is called the Housekeeping Act. That Act permits the heads of an executive department to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and *the custody, use, and preservation of its records, papers, and property*." 5 U.S.C. § 301. Importantly, however, the Act makes clear that it "does not authorize withholding information from the public or limiting the availability of records to the public." *Id.*

The DHS regulations prohibit any employee or former employee of the Department from providing, "in connection with any litigation," "oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department . . . unless authorized to do so by the Office of General Counsel." 6 C.F.R. § 5.44(a). Litigation is defined to

include criminal prosecutions initiated by the Government. *Id.* § 5.41(d) (defining "litigation"). Summonses addressed to a DHS employee must be served on the Office of General Counsel. *Id.* § 5.42(a). With the subpoena, the requesting party must include a written statement that, "with as much specificity as possible," states "the nature and relevance of the official information sought"; the employee, if authorized to testify, will only testify as to "matters which were specified in writing." *Id.* § 5.45(a). When the demand is due before the Department has made a determination, the Department appoints the US Attorney's office to represent it and request a stay, *id.* § 5.46; if the ruling of the court is adverse to the department (e.g., if the court refuses to stay the proceedings to give the Department more time), "the employee on whom the demand has been made shall respectfully decline to comply." *Id.* § 5.47. *Touhy* suggests that the Court cannot hold the employee in contempt for this refusal.

In considering a request under the regulations, the Department considers a number of factors, including (1) whether compliance would be unduly burdensome, (2) whether compliance is appropriate under the relevant substantive law, (3) the public interest, (4) whether the disclosure would violate

the law, and (5) whether disclosure would reveal classified or otherwise privileged information. *Id.* § 5.48.

### III.    Review of Departments' *Touhy* Determinations

There is much controversy about what happens when an agency decides that it will not produce documents or an employee under its own regulations. Some courts have refused to review the decision, and those that say that the decisions are reviewable have not been consistent in the type of review used. Below, we review the First Circuit's precedent on this matter and then examine the specific question of *Touhy* regulations in criminal cases.

### A.  The First Circuit's *Touhy* Cases

The First Circuit has only cited *Touhy* five times. In its earliest opinions, it reserved the question of whether the Government's *Touhy* determinations were reviewable at all. For example, in *Giza v. Sec. of Health, Educ., & Welfare*, 628 F.2d 748 (1st Cir. 1980), the Circuit reviewed a district court's decision refusing to compel an FDA employee's testimony in a state-court case. Finding that the plaintiffs had not stated a valid jurisdictional basis for their request, the Circuit refused to conclude that the district court had erred in declining to compel the testimony. *See id.* at 752. For this reason, the Court

refused to rule on the *Touhy* question. *See id.* ("It is unnecessary for us to decide when, if ever, it would be appropriate for a federal district court to compel the testimony of a federal officer who has been instructed by the head of his or her executive department not to testify."). Likewise, in *Appeal of Sun Pipe Line Co.*, 831 F.2d 22 (1st Cir. 1987), the Circuit considered the issue of whether a government witness could be compelled to testify in a state-court proceeding. Again, the Circuit decided the case on different grounds, but this time it noted two possible ways a federal court could deal with a Department's refusal to comply with a state-litigation related subpoena: it could follow the Government's suggestion and rule that the decision was committed "to the agency's unfettered discretion," or it could review the agency's decision for arbitrariness under the Administrative Procedures Act. *Id.* at 25–26.

More recently, the First Circuit has definitively answered the question, at least in the context of cases where the United States is not an actual party to any preexisting federal-court litigation. In *Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007), the Puerto Rico Department of Justice (PRDOJ) initiated a criminal investigation of some of the FBI's activities on the

island. As part of this investigation, PRDOJ issued subpoenas to the FBI, which the FBI partially refused to honor. PRDOJ then filed suit in federal district court to enforce the subpoenas. The district court quashed the subpoenas and PRDOJ appealed. The Circuit first observed that in order to enforce the subpoenas against the Government, the Government must have waived its sovereign immunity; otherwise, review of the Government's decision was precluded. *Id.* at 57. Because the Government was not a party to any litigation with PRDOJ, the Circuit concluded that the only waiver that PRDOJ could reasonably assert was the Administrative Procedures Act, which waives the Government's sovereign immunity in certain cases. *See id.* at 60 ("[W]e conclude that the judicial review provided by the APA for the denial of information by a federal agency is compatible with Puerto Rico's sovereign authority under the Constitution for the enforcement of its criminal laws."); *see also* 5 U.S.C. § 702 (providing judicial review under the APA under certain circumstances). That is, "to obtain federal judicial review of a federal agency's refusal to release information, 'a state-court litigant must request the documents from the federal agency pursuant to the agency's regulations' and . . . if 'the agency refuses to produce the requested docu-

ments, the sole remedy for the state-court litigant is to file a collateral action under the APA.'" *Id.* at 61 n.6 (quoting *Houston Business Journal, Inc. v. Office of the Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996)).

Because review could be had only under the APA, the FBI's decision could be overturned only on a showing that it had acted arbitrarily or capriciously. *Id.* (citing 5 U.S.C. § 706(2)(A)); *see also id.* ("In general, an agency's 'choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1998))). In conducting this review, the Circuit noted that DOJ's *Touhy* regulations "'do not create an independent privilege authorizing the Department of Justice to withhold information.'" *Id.* at 61 (quoting *Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir. 2001) (internal quotations omitted)). Thus, though review would be deferential, it would turn on whether the Government had a legitimate basis, founded in other substantive law, for its decision not to produce the material. *See id.* ("[T]he FBI's compliance with the regulations cannot be a sufficient justification for withholding requested materials. Instead, our review of the reasonableness of the agency's

decision focuses on the substantive law concerning privilege."). Ultimately, the Court quashed the subpoenas on the grounds that the FBI had acted reasonably in denying access to the requested material on the grounds of law enforcement privilege. *Id.* at 71.

What is important about *Puerto Rico v. United States* is that it states unequivocally that the Government's decisions to withhold information pursuant to *Touhy* regulations are judicially reviewable. It is just as important to recognize that its holding with regard to review being by a collateral APA action was confined to the case's facts: the APA provided the only waiver of sovereign immunity under which the Government's actions could be reviewed; thus, the review was constrained by the APA's standard of review. Chief Judge Boudin's concurrence recognized precisely this point:

> Puerto Rico's lawsuit in federal court, seeking to enforce the state's demand for a turnover of documents and exhibits belonging to or in the custody of the FBI, is itself barred by sovereign immunity unless it falls within an exception—which normally must be created by Congress. This is not an instance of discovery in aid of a federal lawsuit to which the United States has otherwise consented (e.g., a Tucker Act suit against the United States) *or to which it is otherwise susceptible to discovery* (e.g., *a federal criminal prosecution*).

[. . . .]

> *When the United States tries a defendant in its own courts,*
> *no issue of sovereign immunity is present*: disclosure
> obligations depend on federal criminal rules and
> precedents and, ordinarily, material in government
> hands must be produced in response to such require-
> ments or a defense subpoena, *unless* privileged.

*Id.* at 71 (Boudin, C.J., concurring) (emphasis added). We agree
with Chief Judge Boudin and think that *Puerto Rico v. United*
*States*'s holding with regard to the scope of review is limited to
the situation present in that case.[3]

---

**3.**   Notably, the only subsequent First Circuit case discussing *Touhy*
presented a similar factual scenario. In *Cabral v. U.S. Dep't of Justice*, the
Suffolk County Sheriff's Department, the defendant in a § 1983 case in
federal court, made *Touhy* requests directed at the FBI and DOJ. 587
F.3d 13, 18 (1st Cir. 2009). DOJ refused to comply and the district court
denied a motion to compel; the Suffolk County defendants then filed
a collateral APA action. *See id.* As in *Puerto Rico v. United States*, though,
the United States was a non-party that had not otherwise waived
sovereign immunity; resort to the APA was thus proper. *See id.* at
22–23. It is worth pointing out, too, that *Cabral*'s specific holding that
APA review is proper for reviewing third-party subpoenas to the
government arising out of *federal* litigation is itself called into question
by precedent in the District of Columbia Circuit. In *Watts v. SEC*, the
Circuit held that, while APA review is required with regard to state-
court litigation, a federal court does not run into the same sovereign

## B.  The *Reynolds* Case

The Supreme Court has cited *Touhy* only once, in *United States v. Reynolds*, 345 U.S. 1 (1953). That decision, which came only two years after *Touhy*, strongly supports the notion that where the United States is already a party to a case, the court, and not the executive, is empowered to decide whether evidence should be produced.

In *Reynolds*, the widows of several civilian observers who had died in the crash of an Air Force flight sued the Government for damages under the FTCA. *See id.* at 3. Pursuant to Rule 34, the plaintiffs moved for production of the Air Force's accident investigation report; the Air Force refused to produce it, citing a regulation that left to the Secretary of the Air Force discretion about whether to release such material. *See id.* at 3–4. When the issue reached the Supreme Court, it ruled that the decision was not the Secretary's. Instead, it analyzed matter under Rule 34, asking whether the evidence sought was

---

immunity issues, and so review of the an agency's decision not to comply with a civil subpoena should be performed by the district court pursuant to Rule 45. 482 F.3d 501, 508–09 (D.C. Cir. 2007); *see also Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994); *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1275–76 (D. Colo. 2011) (collecting cases).

privileged. *Id.* at 6 ("Since Rule 34 compels production only of matters 'not privileged,' the essential question is whether there was a valid claim of privilege under the Rule."). The Court went on to hold that the privilege must be formally asserted—the Secretary could not simply refuse to produce the report—and that the "court itself must determine whether the circumstances are appropriate for the claim of privilege." *Id.* at 8.

Thus, even in a case concerning national security, the Court held that "[j]udicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *Id.* at 9–10. And, moreover, where the United States is already a party, the correct forum for judicial control is not the APA; it is, rather, the underlying case, where the issue will be governed by the law of evidence that would normally control.

### C. *Touhy* in Criminal Cases

Federal criminal prosecutions initiated by the Government present special circumstances that are not present in cases where the United States is not a party to the underlying action. In addition to the fact that "no issue of sovereign immunity is present" in criminal cases, *id.* (Boudin, C.J., concurring), the accused also has the benefit of certain constitutional rights,

including those enumerated in the due process, confrontation, and compulsory process clauses. The special nature of criminal cases was recognized by the *Reynolds* court. *Reynolds* rejected the idea that, in a civil case, there should be any consequences to the Government for invoking its privilege; in a civil case, the Court said, the Government "is a defendant only on terms to which it has agreed." *Reynolds*, 345 U.S. at 12. Not so in a criminal case, where "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free." *Id.* (citing *Andolschek*). The rationale for this difference, the Court said, was that in criminal cases "the Government which prosecutes an accused also has the duty to see that justice is done"; thus, "it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *Id.*

With these principles in mind, we have conducted a thorough review of criminal case citing *Touhy*. The cases are not entirely consistent, but, especially given the First Circuit's precedent, we think there is ample authority on which to conclude that, once a defendant follows the *Touhy* procedures, a court may compel attendance or production even if the

Government refuses it.

Most cases citing *Touhy* do not go further than denying the defendant's motion to compel for failure to comply with the relevant department's regulations. To take just one example, in *United States v. Passaro*, 577 F.3d 207 (4th Cir. 2009), the defendant, a civilian contractor to the CIA, was convicted of assaulting an Afghan national at an Army outpost in Afghanistan. At trial, the court quashed certain subpoenas directed to the CIA; on appeal, the Circuit affirmed that decision relying in part on the defendant's failure to follow the CIA's *Touhy* procedures. *Id.* at 221.[4]

But when the *Touhy* procedures are followed and the Government refuses to produce the requested material, the courts usually have analyzed the resulting motion to compel under Rule 17 or the substantive law of privilege—and they do so in the underlying case, without requiring collateral suit.[5] For

---

**4.** *See also, e.g., United States v. Springer*, 444 F. App'x 256, 263–64 (10th Cir. 2011); *United States v. Wallace*, 32 F.3d 921, 928–29 (5th Cir. 1994); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982).

**5.** *But see United States v. Fleet Mgmt. Ltd.*, No. 07-279, 2008 WL 1848102 (E.D. Pa. Apr. 24, 2008). In that case, the defendants wished to call a Coast Guard officer to testify, and the Government moved to quash the subpoena. *See id.* at *1. The court denied the Government's motion, but

example, a court in the Eastern District of Virginia has held that

> [o]nce a defendant or litigant complies with an agency's or department's *Touhy* regulations, the agency or department head must either authorize compliance with the subpoena or formally assert a privilege that would justify refusal to comply with the subpoena. . . . *It is then left to the appropriate court to determine whether that claim of privilege bars the production of evidence or testimony sought.*

*United States v. Rosen*, 520 F. Supp. 2d 802, 809 (E.D. Va. 2007) (emphasis added); *see also, e.g.*, *Nixon v. Sirica*, 487 F.2d 700, 708 (D.C. Cir. 1973) ("We note first that courts have assumed that they have the power to enter mandatory orders to Executive officials to compel production of evidence." (citing *Touhy*, 340 U.S. 462, 465–66 (1951) (Frankfurter, J., concurring))); *United States v. Vernon*, No. 11-12(KD), 2012 WL 345361, *5–6 (S.D. Ala. 2012) (analyzing under Rule 17 and privilege principles);

---

it did so employing APA arbitrary and capricious review (though even that, notably, was within the underlying case and not in a collateral action). *See id.* at *2. It did this in apparent reliance on Third Circuit precedent resembling *Puerto Rico v. United States, i.e.*, where the United States was not a party to the underlying action. For the reasons stated in this opinion, we believe that the *Fleet Management* court employed the incorrect standard of review.

*United States v. Sutton*, No. 09-139, 2009 WL 3757690 (E.D. Tenn. Nov. 5, 2009) (same); *United States v. Guild*, No. 07-404(JCC), 2008 WL 169355, *2–3 (E.D. Va. Jan. 15, 2008) (same); *United States v. Moussaoui*, No. 01-455, 2002 WL 1987909, *1 n.1 (E.D. Va. July 22, 2002) (same); *United States v. Hall*, 153 F. Supp. 661 (W.D. Ky. 1957) (same); *United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1953) (same).[6] We agree with *Rosen* and similar cases which have held that district court's treat requests for production under *Touhy* as they would any other request

---

**6.** It is worth giving special attention to one recent case from this district. In *United States v. Aponte-Sobrado*, 824 F. Supp. 2d 285 (D.P.R. 2011), a former AUSA was subpoenaed to testify and produce documents. The Government moved to quash the subpoena on the basis of Touhy. *See id.* at 286 ("The Government insists that the Touhy regulations . . . provide grounds for the Court to quash the defendant's subpoena."). Judge Besosa disagreed, holding that "nothing in the language of these regulations makes reference to the Department's ability to withhold evidence against a valid court order when a subpoena has been appropriately issued by a party defendant." *Id.* at 287. In response to the Government's argument that the motion to quash should be granted because of a failure to comply with the Touhy regulations' specificity requirement, Judge Besosa concluded that the relatively simple descriptions of the requested testimony included in a letter to the subpoeanaed AUSA sufficed under the regulations. *Id.*

for evidence.[7]

## IV.    Conclusion

With these principles in mind, we make the following orders. We cannot at this time rule finally on the motion to compel, as Defendant admits to having failed to followed DHS's *Touhy* regulations and has indicated an intent to re-subpoena the case agent. *See* Docket No. 13. Thus, we hold the motion to compel in abeyance and ORDER Defendant to either

---

**7.** Of course, some cases have gone the other way, giving essentially unfettered discretion to the executive department. *See, e.g.*, *United States v. Vander Luitgaren*, No. 07-211, 2008 WL 2610465, *3 (M.D. Fla. June 30, 2008) (granting Government's motion to quash "on the basis of *Touhy*"); *United States v. Mintz*, No. 91-40045, 1996 WL 666784, *1 (D. Kan. March 15, 1996) ("A Department of Justice employee may not testify without the approval of the appropriate department official. . . . The court will therefore grant the government's motion to quash . . . ."). It is difficult to determine what is the actual holding of most of these cases, as they usually decide the motion on alternate grounds (e.g., also saying that the evidence is irrelevant). *See, e.g.*, *United States v. Ahmad*, 347 F. Supp. 912, 930 (M.D. Penn. 1972) (relying on *Touhy* regulations *and* irrelevancy of requested testimony), *aff'd in part and rev'd in part sub nom.*, *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973) (affirming the district court only on relevance grounds, without mentioning the *Touhy* issue). Moreover, the cases generally seem to confuse *Touhy*'s holding with regard to the ability of a department head to control his employees with a general ability of the Government to withhold evidence. We decline to follow these cases, which we think are incompatible with the relevant case law.

(1) immediately inform the court that he has re-subpoenaed the case agent, or (2) re-subpoena the case agent, in compliance with DHS's regulations, by February 20, 2013. In either case, Defendant must file a copy of the new subpoena, with all attachments required by the regulations, with the Court. The Government is then ORDERED to make its determination with regard to the subpoena within one week from service, or, if it has already been served, by February 20, 2013. This matter has already been delayed too long, and no extensions of time will be granted; failure to respond by the Court's deadline will be treated as a refusal to produce the witness. If the Government does refuse to produce the case agent to testify, we will rule on the motion to compel according to the principles normally applied in criminal cases, and the Government will have an opportunity to assert any privilege or relevance arguments. By a separate order, a further detention hearing will be set for a date after February 27, 2013.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of February, 2013.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE